UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

QUEINTON LAVELL MATTHEWS, JR.,

        Plaintiff,

        v.                                       Case No. 11-CV-852

MARIA KURYLO,

        Defendant.

---

DECISION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 16)
AND DISMISSING CASE

The pro se plaintiff, Queinton Lavell Matthews, Jr., is proceeding in forma pauperis on a First Amendment retaliation claim under 42 U.S.C. § 1983. This order addresses the defendant's motion for summary judgment.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that under the applicable substantive law "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

At summary judgment, facts are construed and reasonable inferences are made in the light most favorable to the nonmoving party. *Speigla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). However, "if the nonmoving party is unable to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial," then summary judgment should be granted. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (citation omitted).

## FACTUAL BACKGROUND[1]

On June 1, 2011, Queinton Lavel Matthews, Jr. was transferred from the Wood County Jail to discipline housing at the Waupaca County Jail, due to his behavioral issues. The Waupaca County Jail classified Matthews as a maximum security inmate in

---

[1] These facts are drawn from plaintiff's verified complaint (doc. 1) as well as defendant's proposed findings of fact (doc. 17) and plaintiff's proposed findings of fact (doc. 34). Where defendant's proposed findings of fact conflict with plaintiff's verified complaint or proposed finding of fact, the factual dispute is noted.

accordance with its classification system, which assigns points based on things such as prior criminal history, current charges, and discipline. Prior to June 1, 2011, Matthews had never been in the Waupaca County Jail, and he left on November 23, 2011.

On July 9, 2011, Emily Ricken and Maria Kurylo were employed by the Waupaca County Sheriff's Department in the jail as correctional officers. Both worked from 6 a.m. to 6 p.m. They were doing head counts on the floor where Matthews was housed. On that occasion, Matthews' cellmate asked Ricken if he could ask her a personal question.[2] Ricken responded by saying that he and Matthews may not go in their cell and have sex. Matthews replied that he was not homosexual. Kurylo retorted that Matthews was gay and if he wanted to have sex with another inmate in the shower she did not want to know about it.[3] Ricken and Kurylo then laughed and left the unit.

On July 18, 2011, Matthews filed an inmate grievance form complaining about Ricken and Kurylo's remarks. The same day Kurylo responded, writing:

> You and inmate Seqouia were apologized to for the remarks said. We were joking with the both of you though I did not say that remark and you were not the one to ask us that question - Seqouia was the one who asked us. We will no longer joke with you and will expect you to follow thru and not say any remarks to us either. I did not appreciate being asked if the both of you could watch Officer Ricken and myself have sex - this remark being said as we were exiting the pod. I did not say a homosexual remarks [sic] but you did - I did not put you on discipline but let it go because we were joking with you. We will

---

[2] In his verified complaint, Matthews states that inmate Samuel Seqouia asked Ricken and Kurylo if he could ask them a personal question. (Compl., Doc. 1 at 3.) However, in Matthews' grievance form, he writes that he was the one who asked Ricken and Kurylo if he could ask them a personal question. (Grievance Form dated July 18, 1011, Doc. 34 at 4.) According to the affidavits of Ricken and Kurylo, Matthews asked if he and another inmate could watch Ricken and Kurylo have sex, and Kurylo and Ricken told him that was not appropriate. (Ricken Aff., Doc. 18 at 2; Kurylo Aff., Doc. 20 at 2.)

[3] Kurylo states that she at no time called Matthews a homosexual. (Kurylo Aff., Doc. 20 at 2.)

3

>    no longer make jokes or such with you and we expect the same in return.

(Officer Response on Grievance Form dated July 18, 2011, Doc. 34 at 4.)

Matthews appealed the grievance to Lt. Russell. Matthews then started experiencing difficulties he believed were retaliatory, which he described as:

>    my mail not getting mailed out to my family, my not getting my mail on they shift, I think my food is being played with, my right to go to school as been denied, on they shift I'm not aloud to use the law library which is my right. they also denie me for church. I'm currently in max custody which is the maximum unit, at the time. I was told that my own behavior will have a direct bearing on my level of custody while I'm at the Jail. that's not tru because I came to Max Pod 2C June 20 I also was told they do classifications every 30 days an it's based on your behavior if you get reclassified an go to a medium unit. with that being said I have not done anything wrong and yet an still I'm still here Officer Maria Kurylo came through for a round I asked her why I have not seen classification yet, she laugh at me an stated you will never leave max, you see what happens when you write grievance on C/O's laughed, and left, that where the retaliation came about me writin a grievance about being disrespected an called a homosexual by CO's.

(Compl., Doc. 1, at 5) [sic].

After filing the July 18, 2011 grievance and until August 31, 2011, Matthews filed at least fifteen inmate requests and four grievances from July 19-August 31, 2011. At his deposition he stated that he had problems with Kurylo and Ricken after filing the grievance because they called him a homosexual. He has no specific recollection of what they did after the grievance was filed. However, he added that "things started happening from them officers towards me in an unprofessional manner." (Queinton Lavell Matthews, Jr. Dep., Doc. 21-1 at 11.) When Matthews was asked for his best recollection of what happened after he filed the grievance, he responded, "I don't remember too many details." When

4

asked to describe the problems or retaliation that he experienced, he responded, "I don't recall," and "I don't remember." (*Id.* at 10-11.)

Ricken and Kurylo did not interfere with Matthews' food, his access to the law library, schooling, or church. Moreover, at no time did they tamper with Matthews' food or prevent him from attending any schooling. Requests for schooling are at the discretion of the instructor and an inmate cannot attend schooling if on discipline. If Matthews was unable to attend school, it was either at the discretion of the instructor or because he was on discipline. And at no time did Kurylo take any steps to place Matthews on discipline. Ricken, on the other hand, does not recall taking any steps to place Matthews on discipline.

At the Waupaca County Jail, inmates may use statutes in their cells; online computer research may be conducted in a separate room within the jail. When an inmate is on discipline, the law library must be used during recreation time.

At no time did Ricken or Kurylo deny Matthews his mail or delay his mail. The inmates in the jail received their mail at 10:00 p.m., well after 6 p.m. when Ricken and Kurylo's shifts ended. Therefore, neither officer would have the opportunity to withhold or delay Matthews' mail.

Neither Ricken nor Kurylo were involved in any decision regarding whether Matthews was allowed to go to church. If an inmate is on discipline, the jail rules prohibit him from attending church.

ANALYSIS

To establish a prima facie case of retaliation, a plaintiff must produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to

5

deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *See Kidwell v. Eisenhaur*, 679 F.3d 957, 965 (7th Cir. 2012) (clarifying allocation of evidentiary burdens at summary judgment in light of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)); *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (same). If a plaintiff satisfies these elements, the burden shifts to the defendants to rebut with evidence showing that they would have taken the same action even without any retaliatory motive. *See Kidwell*, 679 F.3d at 965; *Greene*, 660 F.3d at 979.

By producing in response to the motion for summary judgment a copy of the grievance he filed on July 18, 2011, regarding the July 9 conversation with Ricken and Kurylo, Matthews has satisfied the first element. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012)("A prisoner has a First Amendment right to make grievances about conditions of confinement.") (quoting *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010).

Matthews also offers evidence to support the third element, in the form of a comment by Kurylo:

> Officer Maria Kurylo came through for a round I asked her why I have not seen classification yet, she laugh at me an stated you will never leave max, you see what happens when you write grievance on C/O's laughed, and left, that where the retaliation came about me writin a grievance about being disrespected an called a homosexual by CO's.

(Complaint, Doc. 1, at 5) [sic]. Accepting as true that Kurylo made this statement, it could support an inference of retaliatory intent.

However, Matthews offers only vague and conclusory allegations to support the second element. In his verified complaint, Matthews alleges that Ricken and Kurylo retaliated against him, and he describes the retaliation as:

6

> my mail not getting mailed out to my family, my not getting my
> mail on they shift, I think my food is being played with, my right
> to go to school as been denied, on they shift I'm not aloud to
> use the law library which is my right. they also denie me for
> church.

(Compl., Doc. 1, at 5.) Matthews' complaint does not provide any other details. Moreover, when deposed on March 22, 2012, Matthews stated that he could not recall any specifics of what occurred other than that Kurylo and Ricken called him a homosexual and laughed at him, that he filed a grievance about that, "and then things started happening from them officers towards me in an unprofessional manner." (Queinton Lavell Matthews, Jr. Dep., Doc. 21-1, at 11.) When pressed for details, Matthews responded that he did not recall anything further. *Id.* These minimal and unsupported allegations are insufficient to establish that Matthews suffered a deprivation likely to deter protected speech.

Matthews also alleged in his complaint that:

> I'm currently in max custody which is the maximum unit, at the
> time. I was told that my own behavior will have a direct bearing
> on my level of custody while I'm at the Jail. that's not tru
> because I came to Max Pod 2C June 20 I also was told they
> do classifications every 30 days an it's based on your behavior
> if you get reclassified an go to a medium unit. with that being
> said I have not done anything wrong and yet an still I'm still
> here.

(Compl., Doc. 1, at 5.) However, both Kurylo and Ricken's uncontroverted evidence states that Matthews was transferred from his previous jail under discipline for prior behavioral issues. Matthews acknowledged this during his deposition, stating that he was sent to Waupaca County Jail from Wood County Jail after receiving a disciplinary ticket for hoarding medications: "They sent me straight to Waupaca. 120 days to do in the hole." (Queinton Lavell Matthews, Jr. Dep., Doc. 21-1, at 4.) Thus, Matthews offers no evidence

7

to support a reasonable inference that he was entitled to a more favorable custody status, or that any adverse actions were taken against him as a result of his grievances filed against Kurylo and Ricken such that "he suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); see Civil L.R. 56(a)(1)(A)(E.D. Wis.).

Matthews' allegations in his complaint and its attachments merely state his belief that Kurylo and Ricken were somehow responsible for difficulties that he does not fully describe. This is inadequate to establish a prima facie case of retaliation. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) ("Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (citation omitted). Therefore,

IT IS ORDERED that the defendant's motion for summary judgment (Doc. 16) is granted.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2013.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U.S. District Judge